CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
JAN 20 2012
JULIA C. DUDLEY, CLERK
BY: /s/ J. Clark
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **K-VA-T FOOD STORES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00037 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MARK D. HUTCHINS,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Robert S. Reverski, Jr., Midkiff, Muncie & Ross, P.C., Richmond, Virginia, for Plaintiff. Carl E. McAfee and Joseph R. Carico, Carl E. McAfee, P.C., Norton, Virginia, for Defendant.*

The issue in this ERISA case is whether the undisputed facts are sufficient to grant summary judgment in favor of a plan administrator who seeks reimbursement from the proceeds of an employee's automobile accident settlement for medical benefits paid. I find that summary judgment is appropriate.

I

The plaintiff, K-VA-T Food Stores, Inc. ("K-VA-T"), employed the defendant, Mark D. Hutchins, at one of its grocery stores located in this judicial district. Hutchins was hurt in an automobile accident and settled his personal injury claim. K-VA-T seeks a declaratory judgment recognizing Hutchins'

obligation to reimburse the company employee health benefit plan for its payment of his medical bills.[1]  K-VA-T has moved for summary judgment in its favor. Hutchins opposes summary judgment on the ground, among others, that he wishes to engage in further discovery.  The Motion for Summary Judgment has been briefed and argued and is ripe for determination.

The following are the facts now before the court, as shown by the pleadings, deposition extracts, and witness declarations.

K-VA-T operates a chain of grocery stores, primarily under the name "Food City."  Hutchins was hired at the Big Stone Gap Food City store on February 13, 2010.  K-VA-T sponsors, administers, and is a fiduciary of an employee welfare benefit plan, the "K-VA-T Food Stores, Inc. Tax Savings Plan" (the "Plan").  K-VA-T contends that the Plan is a self-funded employee health-care plan organized under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001-1500.

Hutchins enrolled for coverage under the Plan on May 18, 2010, after he had achieved 90 days of employment with K-VA-T.  K-VA-T avers that it then delivered his proof of medical coverage and a copy of the Summary Plan Description ("SPD") to him via interoffice mail, as was its habit and routine.

---

[1] Subject matter jurisdiction of this court is based upon 29 U.S.C.A. § 1132(a)(3) (West 2009).

Hutchins does not recall having receiving the SPD. The SPD explains that the Plan has a Third Party Recovery Provision that states:

> The Covered Person may incur medical or dental charges due to injuries which may be caused by the act or omission of a Third Party or a Third Party may be responsible for payment. In such circumstances, the Covered Person may have a claim against that Third Party, or insurer, for payment of the medical or dental charges. Accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer. . . . [T]he Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses.
>
> . . .
>
> The Covered Person:
>> . . .
>>
>> (2) must repay to the Plan the benefits paid on his or her behalf out of the Recovery made from the Third Party or insurer.

(Meadows Decl. Ex. 1 at 47.) Under the paragraph entitled Conditions Precedent to Coverage, the SPD further explains:

> The Plan shall have no obligation whatsoever to pay medical or dental benefits to a Covered Person if a Covered Person refuses to cooperate with the Plan's reimbursement and Subrogation rights or refuses to execute and deliver such papers as the Plan may require in furtherance of its reimbursement and Subrogation rights.

(*Id.*)

On June 14, 2010, Hutchins was seriously injured in an automobile accident. K-VA-T thereafter asked Hutchins to sign certain documents confirming its

-3-

reimbursement rights but he refused to do so. Through its third party claims administrator, Wells Fargo, K-VA-T accordingly refused to pay Hutchins' medical bills arising from the accident. Hutchins then filed a lawsuit against Wells Fargo in state court seeking payment of his medical bills, alleging that Wells Fargo was "obligated to pay [Hutchins'] medical expenses pursuant to the Medical Plan affording coverage to [Hutchins]...." (Hutchins' Answer Ex. B.) K-VA-T, through Wells Fargo, then initiated payments to Hutchins and eventually paid medical bills on his behalf totalling $191,948.75.

Hutchins also filed a lawsuit in state court against Jeffrey A. Stapleton. Hutchins alleged that Stapleton negligently caused the automobile accident and his injuries. Upon becoming aware of Hutchins' action against Stapleton, K-VA-T requested that Hutchins recognize its right to reimbursement, keep it informed of all developments, and, should the claim be settled, retain funds sufficient to reimburse K-VA-T. In response, Hutchins informed K-VA-T that he had instructed his attorney, "to not withhold or pay any monies to any party who may have paid any of my medical bills as a result of my employment with Food City Stores under any and all insurance policies." (Meadows Decl. Ex. 4.) Hutchins also said he had instructed the attorney "to not respond to or answer any inquiries as to the amount of any settlement and/or judgment, and you may feel free to file

-4-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 4 of 13   Pageid#: 341

whatever you deem appropriate to attempt to protect your alleged subrogation rights." (*Id.*)

After K-VA-T had filed the present action in this court, Hutchins settled his claim against Stapleton for $850,000, which amount was paid into state court. K-VA-T intervened in Hutchins' state court suit against Stapleton and obtained an order providing that the amount claimed by K-VA-T ($191,948.75) would be held there pending the resolution of this federal court action.

II

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute...will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (italics in original).

Hutchins' opposition to summary judgment proceeds on three grounds. He asserts that there is insufficient proof that the Plan is a self-funded plan and that accordingly, ERISA does not preempt application of Virginia's anti-subrogation statute. He also claims that K-VA-T has not adequately shown that he received a

copy of the SPD or that the terms of the Third Party Recovery Provision can be applied to him.

The parties do not disagree on the underlying legal principles of K-VA-T's claim. It is settled that a self-funded ERISA plan is not subject to state laws regarding insurance, including state anti-subrogation laws precluding health insurers from seeking reimbursement from third parties of medical benefits paid. *See* 29 U.S.C.A. § 1144(b)(2)(B) (West 2009); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). Although Virginia has such an anti-subrogation law, Va. Code Ann. § 38.2-3405 (2007), ERISA preempts its application to a self-funded benefit plan. *State Farm Mut. Auto. Ins. Co. v. Smith*, 342 F. Supp. 2d 541, 543-44 (W.D. Va. 2004).

K-VA-T's evidence in support of its Motion for Summary Judgment plainly shows that the Plan is self-funded. K-VA-T's vice-president of human resources attests to that fact under penalty of perjury. (Meadows Decl. ¶ 6.) The SPD states that the funding for the benefits is "derived from the funds of the Employer and contributions made by covered Employees. The Plan is not insured." (Meadows Decl. Ex. 1 at 59.) A form filed with the U. S. Department of Labor by K-VA-T states that it is a self-funded plan. (Pl.'s Reply Mem. Ex.1 to Ex. B.)

In response, Hutchins points to an employee handbook provided to him when he started work, which under the heading "Hospitalization and Medical

-6-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 6 of 13   Pageid#: 343

Benefits," directs Food City employees to consider their "insurance" options and to review the "insurance policy" with the "insurance company." (Hutchins' Answer Ex. A at 13.) However, the use of such general terms in the employee handbook is not sufficient to raise a genuine issue of material fact in light of the overwhelming evidence supporting the conclusion that the Plan is self-funded.

Hutchins also argues that there is insufficient proof that he ever received a copy of the SPD. He contends that absence such proof, K-VA-T has not shown that it complied with its statutory duty. Hutchins asserts that without such compliance, the Plan does not qualify under ERISA and is thus subject to state law.

ERISA requires the administrator of an employee benefit plan to furnish the SPD, and other materials, to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan. 29 U.S.C.A. § 1021 (West 2008). An administrator who fails to meet this duty is personally liable in the amount of up to $100 a day from the day of failure. 29 U.S.C.A. § 1132(c)(1) (West 2009). ERISA does not provide that an administrator's failure to provide an SPD to a participant makes the Plan unqualified under ERISA or unenforceable in whole or in part. *See Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998) (noting that "it is not at all apparent" that waiving a plan's exclusions and deeming coverage to exist is the proper remedy for failure to provide an SPD).

In any event, the evidence shows that K-VA-T fulfilled its statutory duty to provide Hutchins with the SPD. The relevant regulation states that the SPD "must be sent by a method or methods of delivery likely to result in full distribution," and that the "administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants." 29 C.F.R. § 2520.104b-1(b)(1) (2011). Courts have interpreted this requirement to mean that the administrator must "make reasonable efforts to ensure each plan participant's actual receipt of the plan documents." *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 170 (2d Cir. 2005) (quotation marks and citation omitted). In this case, K-VA-T showed that it routinely forwarded a proof of medical coverage card and the SPD to new employees via interoffice mail. (Meadows Decl. Ex. A at ¶ 8.) Further, Hutchins agreed that he received the interoffice mail but simply could not recall whether the SPD was inside. (Hutchins Dep. 20-21.) In his deposition he stated that he had received an envelope containing the medical plan card and a booklet. He recalled putting the card in his wallet and thought that he laid the book somewhere in case he needed it later. (*Id.* at 22.) K-VA-T's counsel showed him a copy of the SPD and asked if Hutchins knew whether he had received it, but he replied that he did not know "one way or the other" for sure.[2] (*Id.* at 23.)

---

[2] Hutchins' counsel asserted in oral argument that later in his deposition Hutchins was more definite that he had not received a copy of the SPD. However, that portion of the deposition was not filed with the court.

-8-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 8 of 13   Pageid#: 345

Moreover, Hutchins has not shown that he suffered any prejudice from the alleged non-receipt of the SPD. The law is well-settled that for liability to attach for failure to provide an SPD, the claimant "'must show some significant reliance upon, or possible prejudice flowing from,' the lack of notice of an accurate description of the terms of the plan." *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 859 (4th Cir. 1994) (quoting *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141 (4th Cir. 1993) (emphasis omitted)); *see Weinreb*, 404 F.3d at 171. Hutchins has presented no evidence of likely prejudice resulting from the alleged lack of receipt of the SPD. For example, he has not shown that had he known of the Third Party Recovery Provision, he would have rejected K-VA-T's Plan and found some other health coverage. *See First Unum Life Ins. Co. v. Wulah*, No. 06 Civ. 1749 (JCF), 2010 WL 2541273, at *6 (S.D.N.Y. June 17, 2010) (granting summary judgment in favor of plan fiduciary to recover Social Security offsets from plan participant and finding no prejudice in failure to distribute copy of SPD). Thus, even if there was evidence indicating that Hutchins had not received the SPD, he has not shown any likely resulting prejudice.

Hutchins also argues that he is not covered by the Plan and therefore not subject to the Third Party Recovery Provision. He bases this argument on the fact that after his accident he refused to sign documents confirming K-VA-T's

subrogation rights. This argument fails. The SPD states that "[a]ccepting benefits under this Plan . . . automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or Insurer." (Meadows Decl. Ex. 1 at 47.) There is no doubt that Hutchins accepted and received benefits under the Plan. Indeed, Hutchins even sued the third party claims administrator seeking to obtain benefits under the Plan, which he alleged were due "pursuant to the Medical Plan affording coverage to [him]." (Hutchins' Answer Ex. B ¶ 3.)

The summary judgment evidence establishes that the Plan is a self-funded ERISA plan with an unambiguous provision establishing K-VA-T's rights to reimbursement of the amount of medical expenses which the Plan paid for Hutchins. K-VA-T's claim is valid and enforceable.[3]

III

Hutchins also objects to summary judgment on the ground that he has not had adequate time to conduct discovery.

---

[3] K-VA-T asserts (and Hutchins does not dispute) that it is entitled to full recovery of these funds without any offset or deduction for Hutchins' attorneys fees incurred in prosecuting the action against Stapleton. The SPD states that the Plan's subrogation rights provide the Plan with a "100%, first dollar priority over any and all Recoveries and funds paid by a Third Party to a Covered Person . . . including a priority over any claim for . . . attorneys' fees." (Meadows Decl. Ex. 1 at 47.) Where the right to full reimbursement is clearly outlined in the Plan, a participant cannot withhold attorneys' fees from the reimbursement. *See Bollman Hat Co. v. Root*, 112 F.3d 113, 117 n.3 (3d Cir. 1997). K-VA-T is entitled to recovery of the full amount of $191,948.75.

-10-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 10 of 13   Pageid#: 347

Pursuant to a Scheduling Order entered August 3, 2011, the court imposed a deadline of December 3, 2011, to complete discovery, the trial being set for January 17, 2012. The Scheduling Order provides that "[t]his schedule requires that written discovery be served in sufficient time to allow the responding party time to respond before the cutoff date for discovery." (Scheduling Order ¶ 10.) In spite of this direction, Hutchins served interrogatories and requests for admission on November 18, 2011, which would not have allowed K-VA-T the time permitted under the rules to respond before the cutoff date for discovery. K-VA-T accordingly objected to the interrogatories and Hutchins moved to compel answers. The magistrate judge denied the Motion to Compel, ruling that the discovery requests were not timely. Hutchins offered no explanation for his failure to serve the discovery earlier in the case.

Hutchins has objected to the magistrate judge's ruling and contends that it would be unfair to grant summary judgment against him without the benefit of answers to his interrogatories.

I find that the magistrate judge's order denying the Motion to Compel was not clearly erroneous. A litigant bears a "heavy burden" when seeking to overturn a magistrate judge's discovery ruling, *Peebles v. Four Winds Int'l*, No. 6:07cv00001, 2008 WL 901550, at *3 (W.D. Va. Mar. 31, 2008), and Hutchins has not met that burden.

-11-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 11 of 13   Pageid#: 348

Moreover, Hutchins has failed to comply with Rule 56 in seeking more time for discovery. He has not shown by "affidavit or declaration that, for specified reasons," he "cannot present facts essential to justify [his] opposition" to summary judgment. Fed. R. Civ. P. 56(d). Indeed, Hutchins has not identified any specific information that he might reasonably receive in discovery – including the unanswered interrogatories – that would allow him to overcome the plaintiff's case. He simply hopes that something might turn up that will turn the case in his favor.

I will overrule the objection to the magistrate judge's order.[4]

IV

K-VA-T also seeks attorneys' fees on the basis that the Plan grants it the right to be reimbursed for those fees if it needs to file suit to recover payments for medical expenses and that an award of attorneys' fees is merited under 29 U.S.C.A. § 1132(g).

In order to allow the parties to fully advise the court as to the request for attorneys' fees, and in accord with Federal Rule of Civil Procedure 54(d)(2), I will

---

[4] K-VA-T has filed a Motion in Limine seeking to preclude Hutchins from offering evidence at trial because of his failure to make timely Rule 26(a)(3) pretrial disclosures. In order to further consider K-VA-T's Motion for Summary Judgment, I cancelled the January 17 trial date. For that reason, and in light of the fact that I will enter judgment for K-VA-T, I will consider its Motion in Limine as moot.

permit K-VA-T to file a motion for attorneys' fees within 14 days after the entry of judgment, conforming to Rule 54(d)(2)(B). If no such motion is filed, the court will assume that attorneys' fees are not requested.

V

For the reasons stated, I will grant K-VA-T's Motion for Summary Judgment and enter judgment in its favor.

DATED: January 20, 2012

/s/ James P. Jones
United States District Judge

-13-

Case 1:11-cv-00037-JPJ-PMS   Document 46   Filed 01/20/12   Page 13 of 13   Pageid#: 350